# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KATRINA MCGREW,

                    Plaintiff,              CASE NO. 16-10978
                                           HON. DENISE PAGE HOOD

v.

SERGEANT DUNCAN, *et al.*,

                    Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#41]

## I.     BACKGROUND

### A. Procedural Background

On March 17, 2016, Plaintiff Katrina McGrew ("McGrew") brought this action against Defendants Sergeant Duncan ("Duncan"), Ramson Williams ("Williams"), D. Brents ("Brents"), Lynn Moore ("Moore"), S. Kue ("Kue"), E. Jackson ("Jackson"), D. Harnphanich ("Harnphanich"), W. Zeolla ("Zeolla"), John Doe Officers, and the Detroit Police Department ("DPD") (collectively "Defendants"). (Doc # 1) McGrew's allegations against Defendants include Use of Excessive Force against McGrew in violation of 42 U.S.C. § 1983 (Count I), Battery (Count II), Assault (Count III), Conversion (Count IV), Statutory Conversion

1

(M.C.L. 600.2919a) (Count V), and Intentional Infliction of Emotion Distress (Count VI). (Doc # 1, Pg. 6–10) McGrew seeks the restoration of her property seized by Defendants, full and compensatory damages, punitive damages, reasonable attorney's fees and costs, and any other relief the Court sees just and proper. *Id.*

A Scheduling Order was issued by the Court on November 8, 2016, which ordered that discovery was to be complete on March 8, 2017. (Doc # 9) Pursuant to a Stipulation and Order Amending the Scheduling Order, a new deadline for completion of discovery was set for May 8, 2017. (Doc # 18) McGrew filed a Motion for Sanctions and to Compel Discovery on May 1, 2017. (Doc # 19) McGrew's Motion to Compel Discovery was granted in part, and deferred in part, by Magistrate Judge Elizabeth A. Stafford ("Magistrate Judge Stafford"). (Doc # 25) Pursuant to a Stipulation and Order, the Scheduling Order was modified to extend all deadlines. August 4, 2017 was the deadline for completion of Discovery. (Doc # 26) September 5, 2017 was the dispositive motion deadline. *Id.* McGrew also filed a Motion for Leave to file an Amended Complaint on July 20, 2017. (Doc # 28) On August 22, 2017, Magistrate Judge Stafford issued an Order denying McGrew's Motion for Leave to file an Amended Complaint, and granting in part McGrew's previously deferred portions of her Motion to Compel Discovery. (Doc # 36)

This matter is before the Court on Defendants' Motion for Summary Judgment filed on September 5, 2017.  (Doc # 40)  McGrew filed a Response on September 26, 2017.  (Doc # 45)  Defendants did not file a Reply.

For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### B. Factual Background

On November 26 2014, a warrant was issued for the search of 18744 Glastonbury in the Detroit, Michigan.  (Doc # 41-2)  A group of Detroit Police Officers including Sergeant Duncan and Officers Williams, Brents, Moore, Kue, Jackson, Harnphanich, and Zeolla, executed the search warrant the same day. According to McGrew, the group of officers forcefully entered her home sometime between 8:00 p.m. and 9:00 p.m.  (Doc # 41-3, Pg. 25, 28:22-29:5)

McGrew stated that all of the officers wore all black, and that she could only see their eyes.  (*Id.*, Pg. 26, 29:20-30:11)  It is undisputed that one of the officers threw her down and handcuffed her during the search.  (*Id.*, 29:13-15)  McGrew asserts that she told the officer who threw her down the handcuffs were too tight (*Id.*, Pg. 29, 32:3-32:7), and he replied saying "shut up, bitch, you shouldn't be so fat." (*Id.*, Pg. 33, 33:4-33:9)  She described the officer as a "light-skinned" black man, with a medium build, and approximately six feet, two inches tall.  (*Id.*, Pg. 29, 29:20-30:11)

The officers seized a .380 caliber pistol and brown paper bag of marijuana. (Doc # 41-2) McGrew alleges that some of her other personal property went missing after the raid. Specifically, she alleges that a Samsung Galaxy S4 tablet, a pair of diamond earrings, a Galaxy S5 cell phone, and a Kahr 9 millimeter pistol were missing after the raid. (Doc# 1, Pg. 5, ¶¶ 31-33)

McGrew did not see any of the officers with her Galaxy S4 tablet, the Galaxy S5 cellphone, her diamond earrings, or her Kahr pistol. (Doc # 41-3, Pg. 37, 38:2-4; *Id.*, 38:10-12; *Id.*, 38:18-20; *Id.*, 37:16-17) She did see the officers with her Ruger handgun. (*Id.*, Pg. 33, 36:18-20) McGrew last saw the tablet and cell phone when she put them in a drawer a week or two after she moved into 18744 Glastonbury on October 1, 2014. (*Id.*, Pg. 49, 49:25-50:1; 12:10-13) She could not remember when she had last seen her diamond earrings. (*Id.*, Pg. 45, 46:4-12) She had last seen her Kahr pistol a week before the search warrant was executed. (*Id.*, 47:3-4)

After the execution of the warrant, McGrew was treated for her wrist injury at Henry Ford Hospital. (*Id.*, Pg. 21-22, 24:19-25:15) Her medical records reflect the presence of ecchymosis (bruising) on her right wrist. (Doc # 41-4) She was not diagnosed with any medical condition related to her wrist. McGrew testified that she did not suffer any physical injuries other than to her wrists. (Doc # 41-3, Pg. 37, 39:1-7)

## II. ANALYSIS

### A. Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a

genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## B. Excessive Force

### 1. *Qualified Immunity*

Each Defendant officer argues that he is entitled to qualified immunity on the excessive force claim against him. McGrew argues that the officers are not entitled to qualified immunity because a material issue of fact exists as to whether the officers' conduct in handcuffing her was objectively reasonable under the Fourth Amendment.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th

Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A government official will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the action at issue was lawful; but if an officer of reasonable competence could disagree on this issue, immunity should be recognized.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Qualified immunity is an initial threshold question the court is required to rule on early in the proceeding so that the costs and expenses of trial are avoided where the defense is dispositive.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Id.*

The first inquiry to determine qualified immunity is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity.  *Saucier*, 533 U.S. at 201.  If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition.  *Id.*  Under the doctrine of qualified immunity, an official will not be

found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The "clearly established" right allegedly violated by the officials cannot be considered at an abstract level, but must be approached at a level of specificity: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court.

Where a plaintiff complains of excessive force in the course of an arrest, investigatory stop, or other seizure, the claim must be analyzed under the Fourth Amendment's objective reasonableness standard, not under a substantive due process standard. *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The Supreme Court has further explained:

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. The question for the Court is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This test "requires a 'careful balancing' of the individual interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396).

Unduly tight or excessively forceful handcuffing during the course of a seizure is prohibited by the Fourth Amendment. *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citation omitted). This right was "clearly established" for qualified immunity purposes at the time McGrew was placed in handcuffs. *Id.* (citation omitted). To survive summary judgment on a handcuffing claim, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) the plaintiff complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some

physical injury" resulting from the handcuffing. *Id.* (citing *Lyons v. City of Xenia,* 417 F.3d 565, 575–76 (6th Cir.2005)).

McGrew satisfies all three elements. First, McGrew provided testimony that she told the officer who handcuffed her that they were too tight. Second, she testified that the same officer ignored her request and subsequently replied "shut up, bitch, you shouldn't be so fat." Finally, McGrew was treated for her wrist injury at Henry Ford Hospital, where the presence of bruising was found. Defendants argue that handcuffing that results in bruising does not violate a clearly established right. However, the Sixth Circuit has held that "allegations of bruising and wrist marks create a genuine issue of material fact with regard to the injury prong." *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 403 (6th Cir. 2009).

McGrew has offered sufficient evidence to create a genuine issue of material fact regarding each element of her handcuffing excessive force claim. Defendant officers' request for qualified immunity on the excessive force claim is **DENIED**.

### 2. *Officer Identity*

Defendants additionally argue that summary judgment should be granted for all Defendant officers because a qualified immunity defense cannot be overcome unless a plaintiff can demonstrate that each individual officer, through his "own individual action, has violated the Constitution." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Defendants

argue that McGrew cannot demonstrate that any one of the Defendant officers personally violated her rights based on the description of the violating officer that she provided via testimony.  Defendants assert that none of the officers present when McGrew was handcuffed fit the description of a "light-skinned" black man approximately six feet, two inches tall.

Plaintiff argues that because the officers were dressed in all black, any one of the officers could have appeared to be a six feet, two inch tall light-skinned black man to McGrew.  McGrew adds that the law of the Sixth Circuit allows her excessive force claim to be brought against all the Defendants based on the facts.

The Court agrees with McGrew.  In *Burley v. Gagacki*, 729 F.3d 610 (6th Cir. 2013), the Sixth Circuit held that a plaintiff's inability to identify officers who entered her home as a result of the officers' conduct—such as wearing all black clothing and face masks to conceal their identities, and failing to identify themselves—will not bar an attempt to establish individual liability under § 1983. *See Id.* at 622 ("Although an officer's mere presence at the scene of a search is insufficient to establish individual liability under § 1983[,] here the agents' intent to conceal contributed to plaintiffs' impaired ability to identify them.").  The Sixth Circuit stated, "[W]e are not inclined to shield the federal defendants from liability as a reward for their unethical refusal to identify themselves by name and badge

number." *Id.* The *Burley* court decided that evaluating the evidence establishing officer identity should be left to the discretion of the district court. *Id.* at 623.

Viewing the facts in the light of most favorable to McGrew, several facts support the denial of summary judgment. First, all of the named Defendant officers in this case were present at the scene when McGrew was arrested. Second, the officers' names are listed on the arrest report entered by Defendant Williams. (Doc # 1-1) Third, it is undisputed that one of the Defendant officers did in fact arrest McGrew. Fourth, McGrew was later found to have bruising on her wrist by a medical professional. To support their position, Defendants focus largely on the physical appearance of each individual Defendant officer, all of whom are shorter than six feet, two inches tall, and only two of whom, Duncan and Williams, can accurately be described as a "light skinned black man" based on the photos provided by Defendants. (Doc # 41, Pg. 7–10)

This Court, however, will not speculate as to what McGrew meant by the term "light skinned." It would be improper for this court to grant summary judgment with respect to any one Defendant officer based such an amorphous description. Further, none of the officers are taller than six feet, and none of them are shorter than five feet, six inches tall. McGrew's description is based on her observations made during a forced entry search, while being placed faced down and arrested.

McGrew also testified that she could remember the eye color and voice of the officer who handcuffed her if given the opportunity.[1]  (Doc 41-3, Pg. 33, 35:2-9)  A reasonable juror could determine that any one of the Defendant officers present violated McGrew's Constitutional rights if provided with additional information—such as descriptions of where each officer was positioned in the home, what each officer did during the search, voice recognition testimony, or more.[2]  Summary judgment with respect to each Defendant officer regarding the excessive force claim is **DENIED**.

## C. Intentional Torts

### 1. *Governmental Immunity*

Defendant officers argue that they should be granted summary judgment on each intentional tort claim because Michigan law grants police officers governmental immunity when performing discretionary acts in good faith, within the scope of their employment.  McGrew argues that Defendants were not acting in good faith or without malice when one of the officers pinned McGrew to the ground, handcuffed, and ridiculed her.

---

[1] The Court notes that Defendants provided McGrew with recorded statements made by the Defendant officers to Antonio Jones of the Office of the Chief Investigator, included on a CD, in which the Defendant officers discuss the raid of McGrew's home and her allegations against each officer.

[2] The Court notes that Officer Lynn Moore, a white man, testified that he did not have on a face mask during the raid.  (Doc # 41-5, Pg. 2, 60:5-18)

Under Michigan law, governmental employees are granted immunity from liability for intentional torts where (1) an employee's acts were taken during the course of employment and the employee was acting, or reasonable believed he was acting, within the scope of his authority; (2) the acts were taken in good faith and without malice; (3) the acts where discretionary/decisional and not ministerial/operational. *Odom v. Wayne County*, 482 Mich. 459, 468 (2009) (citing *Ross v. Consumers Power Co.*, 420 Mich. 567, 633–34 (1984)). Assault, battery, conversion, and intentional infliction of emotional distress are all intentional torts, so the *Odom* test should be applied to each claim separately.

### 2. *Assault & Battery*

Defendants argue that summary judgment should be granted on the assault and battery claims because there is no evidence to show that any individual officer battered or assaulted McGrew. McGrew alleges that one of the Defendant officers committed assault when they threw McGrew to the ground without any provocation on the guise of securing her for handcuffing. McGrew alleges that batteries were committed when she was thrown to the ground without any provocation and when Defendants did not make any attempt to loosen the handcuffs.

Regarding governmental immunity, it is established under Michigan law that "handcuffing an individual under normal circumstances incident to an arrest without resistance may be a ministerial act[.]" *Oliver v. Smith*, 290 Mich. App. 678, 690

(2010). When an officer makes a decision concerning what type of action to take, "e.g., to make an arrest, issue a warning, or wait for assistance, [it] is a discretionary act entitled to immunity. However, the execution of that decision is merely a ministerial act." *Id.* at 690. "It was generally conceded in *Ross* that a police officer's use of excessive force in effectuating an arrest is a ministerial act and not entitled to the cloak of immunity." *Butler v. Detroit*, 149 Mich. App. 708, 718 (1989).

Handcuffing during the course of a regular arrest may be a ministerial act under Michigan law. When an individual does something that might require the officer to use her discretion to determine the appropriate method to handcuff the individual, the act of handcuffing may become discretionary. It is undisputed that the group of Defendant officers entered McGrew's home by force, and put her on the ground and arrested her immediately upon entry.

Neither party has indicated that McGrew did anything unusual or provoked the handcuffing officer in any way. It appears the officers entered the home by force planning to secure the premises by placing everyone present in handcuffs. "Ministerial acts require 'obedience to orders or the performance of a duty in which the individual has little or no choice[.]" *Jackson v. Lubelan*, No. 13-CV-15178, 2015 WL 8175015, at *4 (E.D. Mich. Dec. 8, 2015), *aff'd in part, remanded in part*, 657 F. App'x 497 (6th Cir. 2016). In this instance, it appears that the act of handcuffing was an executed part of a plan to forcibly enter McGrew's home. The act of

handcuffing was ministerial. The Court need not address the other factors of the governmental immunity test. Defendant officers are not entitled to governmental immunity on the assault and battery claims.

"To recover civil damages for assault, plaintiff must show an intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482–83 (2004). An assault is "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v. Nickens,* 470 Mich. 622 (2004). "To recover for battery, plaintiff must demonstrate a willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *VanVorous*, 262 Mich. App. at 483.

Under Michigan law, "an officer who uses more force than is reasonably necessary to effect a lawful arrest commits a battery upon the person arrested to the extent the force used was excessive." *Grawey v. Drury*, No. 06-12078-BC, 2007 WL 4395567, at *8 (E.D. Mich. Dec. 11, 2007), *aff'd*, 567 F.3d 302 (6th Cir. 2009) (citing Mich. Civ. JI 115.09). This Court has already determined that a material issue of fact exists regarding McGrew's excessive force claims for handcuffing.

There is a triable issue of fact as to whether the officers' conduct was reasonable based on the bruising McGrew experienced, and her alleged indication that the handcuffs were too tight.

A reasonable juror could determine that a battery was committed against McGrew. Summary judgment on McGrew's battery claim is **DENIED**. Similarly, a reasonable juror could also determine McGrew was put on the ground to commit the alleged battery. Summary judgment on McGrew's assault claim is **DENIED**.

### 3. *Intentional Infliction of Emotional Distress*

Defendants argue summary judgment should be granted regarding McGrew's intentional infliction of emotional distress claim because Defendant officers conduct did not rise to the level of extreme and outrageous conduct, and there is no evidence that they acted reckless or intended to inflict emotional distress on McGrew. McGrew argues that she suffered from intentional infliction of emotional distress when Defendants illegally broke down the front door of her home, slammed her to the ground, handcuffed her, ridiculed her weight, and seized her belongings.

Regarding governmental immunity, there is not a dispute whether the Defendant officers were acting in good faith pursuant to a valid search warrant, and within the scope of their employment. Defendants have satisfied the first two factors in the *Odom* test. As stated previously, the act of handcuffing McGrew was ministerial in this instance. The search of a home and seizure of evidence of criminal

activity after the area has been secured, is similarly ministerial. Governmental immunity does not apply to the search and seizure conducted at McGrew's home in this instance.

To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Watkins v. City of Southfield*, 221 F3d 883, 890 (6th Cir. 2000) (citing *Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594 (1985)). A defendant with an intent to cause tortious or even criminal harm is not enough, nor is an intent to inflict emotional distress, nor malice or conduct that might entitle a plaintiff to punitive damages for another tort. *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190, 195 (6th Cir. 1985).

The conduct must be so outrageous and extreme that it goes beyond all possible bounds of decency, that it is regarded as atrocious, and intolerable in a civilized community. Restatement (2d) of Torts, § 46 (1965); *Polk*, 801 F.2d at 195. A defendant will not be found liable for "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities . . . ." *Polk*, 801 F.2d at 195 (citing Restatement (2d) of Torts § 46, comment d (1965)). The distress must be "so severe no reasonable man could be expected to endure it." Restatement (2d) of Torts 46, comment j (1965). Intentional infliction of emotional distress claims may be decided

entirely on summary judgment as a matter of law.  *Miller v. Currie*, 50 F.3d 373, 377–78 (6th Cir. 1995).

McGrew has failed to demonstrate that any of the Defendant officers' conduct was extreme or outrageous.  The officers forcibly entered her home pursuant to a valid search warrant.  McGrew was put on the ground and handcuffed during the search of the area.  The search warrant gave the officers authority to search the home for evidence of drug trafficking.  McGrew has not alleged that the officer made her suffer any further physical abuse beyond the excessively tight handcuffing.

Her claim for intentional infliction of emotional distress relies primarily on comments made by the handcuffing officer, who called her a "bitch" and told her she "shouldn't be so fat."  McGrew also testified that he kept calling her a "bitch" and later added, "[I]f you don't shut your fucking mouth I can blow your head off and nothing can be done."  (Doc # 41-3, Pg. 10, 34:11-23)  While this conduct is reprehensible, it does not rise to the level of extreme and outrageous.

McGrew has not alleged that the officer pointed a gun at her, or provided any other indication that the threat was serious.  McGrew has not alleged that the officer physically harmed her following the handcuffing.  Viewing the facts in the light most favorable to McGrew, there is nothing on the record that rises to the level of extreme and outrageous.  McGrew's attempt to argue that the taking of her property supports her claim of intentional infliction of emotional distress is insufficient because

"[t]here is no Michigan precedent that permits the recovery of damages for emotional injuries allegedly suffered as a consequence of property damage." *Smith v. City of Detroit*, No. 16-11882, 2017 WL 3279170, at *11 (E.D. Mich. Aug. 2, 2017) (quoting *Preston v. City of St. Clair Shores*, 2015 WL 12516687, at *10–11(E.D. Mich. Dec. 31, 2015)).

Summary judgment on McGrew's intentional infliction of emotional distress claim against all Defendants is **GRANTED**.

### 4. *Conversion Claims*

Defendants argue that they are entitled to summary judgment on McGrew's conversion claim because there is no evidence that any of the Defendant officers took her property. In addition, Defendants argue that summary judgment should be granted with respect to the statutory conversion (M.C.L. § 600.2919a) claim because there is no evidence that any of the Defendant officers converted McGrew's property for his own use. McGrew argues that particular personal items were missing following the search that were not returned to her.

On the issue of governmental immunity, the search of a home and seizure of evidence of criminal activity after the area has been secured, is ministerial. Governmental immunity does not apply to the search and seizure conducted at McGrew's home in this instance.

Under Michigan law, "conversion" is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438 (Mich. 1960). Defendants assert that there has been no evidence of conversion presented, and McGrew did not see any of the officers with the property that went missing. McGrew, however, testified that she did see one of the Defendant officers with her Ruger handgun. (Doc # 41-3, Pg. 33, 36:18-20) She also specified where each allegedly stolen item was located before the raid on her home. (*Id.* at 37:1-38:20) Neither party has any other evidence on the conversion claim. There is a material issue of fact regarding the whereabouts of McGrew's allegedly stolen property, and a reasonable juror could determine that the Defendants officers took her belongs. Summary judgment on McGrew's common law conversion claim against each Defendant officer is **DENIED**.

Statutory conversion under MCL 600.2919a requires proof that a defendant applied or employed the taken property for some purpose of his own. *Aroma Wines & Equip., Inc. v. Columbian Distribution Servs., Inc.*, 303 Mich. App. 441, 448 (2013), *aff'd and remanded sub nom*, *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.,* 497 Mich. 337 (2015). The Court **GRANTS** summary judgment with respect to McGrew's statutory conversion claim against all Defendants because she has not (1) pled the required use element of a statutory

conversion claim (see Doc # 1, Pg. 9, ¶ 65), or (2) provided evidence that establishes the use element of a statutory conversion claim.

### D.  Detroit Police Department Claims

Defendants argue that summary judgment should be granted on all of McGrew's claims against the Detroit Police Department because: (1) municipal departments are not legal entities amenable to lawsuit; (2) McGrew has not stated a claim against the City of Detroit; and (3) the McGrew has not made any factual allegations against the Detroit Police Department. The Court agrees with Defendants.

First, city departments are not separate legal entities against which a suit can be directed.  *E.g.*, *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997); *Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 637 (E.D. Mich. 1996); *Michonski v. City of Detroit*, 162 Mich. App. 485, 490 (1987); *Davis v. Chrysler Corp.*, 151 Mich. App. 463, 467 (1986).  McGrew's claims against the Detroit Police Department are therefore **DISMISSED**.

Second, McGrew cannot bring any of the aforementioned intentional tort claims against the City of Detroit because a "city cannot be held vicariously liable for torts of its police officers committed during the course of an arrest because the officers were engaged in police activity, which is a governmental function entitled

to immunity." *Ross v. Consumers Power Co.*, 420 Mich. 567, 625 (1984) (citing *Sherbutte v. Marine City*, 374 Mich. 48, 50 (1964)).

Finally, McGrew has failed to state a constitutional claim against the City of Detroit. "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's constitutional rights." *Brown v. Battle Creek Police Department*, 844 F.3d 556, 573 (6th Cir. 2016) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)).

"A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability." *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citations omitted). "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Slusher v. Carson,* 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). A plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Brown*, 844 F.3d at 573 (citing *Fisher v. Harden,* 398 F.3d 837, 849 (6th

Cir. 2005)).  McGrew has failed to allege a *Monell* claim in her Complaint, but has not provided any evidence to support such a claim.

Summary judgment on all claims against the Detroit Police Department is **GRANTED**.

## III.   CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' Amended Motion for Summary Judgment (Doc # 41) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Summary Judgment on the intentional infliction of emotional distress claim against all Defendants is **GRANTED**.

**IT IS FURTHER ORDERED** that Summary Judgment on the statutory conversion claim against all Defendants is **GRANTED**, but Summary Judgment on the common law conversion claim against all Defendants is **DENIED**.

**IT IS FURTHER ORDERED** that Summary Judgment on all claims against the Detroit Police Department is **GRANTED** and the Detroit Police Department is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that Summary Judgment on all other claims

against each individual Defendant officer is **DENIED**.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  August 10, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 10, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager
